## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JORDAN D.,

    *Plaintiff,*

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

Case No. 1:24-cv-01252-RLH

### ORDER & OPINION

Plaintiff Jordan D. filed this suit to challenge an administrative law judge's finding that she is not disabled under the Social Security Act and thus ineligible to receive disability benefits. The parties have consented to final disposition of this case by a U.S. Magistrate Judge. (*See* Doc. 5.) Upon review, the Court finds that the ALJ's opinion was supported by substantial evidence, so the Court affirms.

### LEGAL STANDARDS

**I.     The Social Security Act**

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II. Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's

decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Jordan

Jordan was born in 1995, (R. at 398[1]), and has received her general education development and been certified as a medical assistant. (R. at 80). She has held various jobs, including at a veterinary clinic, Walmart, a pet store, and OSF. (R. at 71–75.) She was last employed in late 2022. (R. at 71–75.)

### II.    Procedural History

In September 2021, Jordan applied to the Social Security Administration for supplemental security income, alleging that she has been disabled since July 2001. (R. at 26.) Her application was initially denied in May 2022 and denied upon reconsideration the following July. (R. at 26.) She then requested a hearing before an ALJ, (R. at 26), which took place in May 2023, (R. at 65.) Present at that hearing were Jordan, her attorney, and a vocational expert. (R. at 63.)

After the hearing, the ALJ issued a written opinion concluding that Jordan was not disabled and therefore not entitled to disability benefits. (R. at 50.) In response, Jordan sought review of the ALJ's decision with the Appeals Council, but her request was denied. (R. at 1.) Jordan then filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1.) Jordan filed her brief in October 2024, (Doc. 7), and the Commissioner responded in December. (Doc. 11).

---

[1] "R." refers to the Certified Administrative Record filed on September 16, 2024. (Doc. 4.) The page numbers cited in this Report and Recommendation refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

**III.    The ALJ's Decision**

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Jordan was disabled. At step one, she determined that Jordan engaged in "substantial gainful activity" in the third and fourth quarters of 2022, based on her earnings during those periods. (R. at 29.) The ALJ observed, however, that there have been "continuous 12-month period(s)" during which Jordan was not engaged in such activity and clarified that her analysis would address only those periods. (R. at 29.) At step two, the ALJ found that Jordan had the following severe impairments:

- Ehlers-Danlos syndrome (EDS);
- Status post left hip arthroplasty in 2019 due to history of labral tear;
- Obesity;
- History of lumbar spine degenerative disc disease;
- Major depressive disorder;
- Anxiety Disorder;
- Borderline personality disorder; and
- Marijuana use disorder.

(R. at 29.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 32.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Jordan] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). She can never climb ladders, ropes, or scaffolds and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. She may occasionally reach overhead with the bilateral upper extremities and frequently reach in all other directions with the

6

> bilateral upper extremities. She may frequently push and pull with the bilateral upper extremities. She may have no more than occasional exposure to weather, extreme cold, extreme heat, and lung irritants such as fumes, noxious odors, dusts, mists, gases, and poor ventilation. She can understand, remember, and carry out simple and detailed but not complex work instructions. She is able to sustain the necessary attention and concentration in two hours increments [sic] throughout the day to sustain simple job duties assuming typical workday breaks. She can make simple work-related decisions. She can respond appropriately to supervision but is limited to occasional interaction with coworkers and occasional work with the general public. She is limited to a routine work setting and is able to deal with occasional changes in a routine work setting.

(R. at 36.) At step four, the ALJ found that Jordan cannot perform her past relevant work. (R. at 48.) Finally, at step five, the ALJ concluded that Jordan's RFC would allow her to perform jobs in the national economy, including "electrical assembly," "hand packager," and "office helper." (R. at 49.) Based on the ALJ's conclusion at step five, she determined that Jordan is not disabled. (R. at 50.)

## DISCUSSION

Jordan challenges the ALJ's opinion two grounds. First, she argues that the ALJ failed to resolve a conflict between the *Dictionary of Occupational Titles* and the vocational expert's testimony. Second, she argues that the ALJ did not properly consider her subjective complaints of pain. Neither warrants remand.

### I.    The DOT and the VE's Testimony Did Not Conflict

Citing Jordan's history of dislocating her shoulders, the ALJ found that Jordan could reach overhead only occasionally, but that she could frequently reach in all other directions. (R. at 46; 103.) At the hearing, the ALJ included those limitations (among others) in a hypothetical posed to the vocational expert (VE), asking whether those limitations allow a person to perform work in the national economy. (R. at 90.)

7

The VE answered yes, citing six jobs (three light, and three sedentary) as examples of jobs that Jordan could perform. (R. at 90.) Jordan challenges the ALJ's reliance on this testimony. She argues that, according to the DOT, all six of those jobs require frequent reaching. Those reaching requirements are thus in tension with the ALJ's finding that Jordan could reach overhead only occasionally. As Jordan sees things, that conflict triggered the ALJ's obligation to resolve it, but she failed to do so.

The Court disagrees. True, "SSR 00–4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts" between a vocational expert's testimony and the DOT. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (emphasis omitted). And an ALJ must "elicit a reasonable explanation for any discrepancy." *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). But there is no such discrepancy here. That is because the DOT speaks only to reaching requirements generally; it does not further subdivide those reaching requirements on a direction-by-direction basis. (Pl. Br. 15.) *See also, e.g.*, Office Helper, DICOT 239.567-010, 1991 WL 672232 (Jan. 1, 2016) (noting that the position requires frequent reaching). The ALJ's hypothetical, by contrast, limited only Jordan's ability to reach *overhead*—not her ability to reach generally. The ALJ's hypothetical—and, in turn, the VE's testimony—therefore spoke to limitations that the DOT did not address. *See Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT." (emphasis omitted).)

To illustrate what an apparent conflict looks like, consider *Landing v. Astrue*, No. 3:11-cv-404, 2013 WL 1343864 (N.D. Ind. Apr. 3, 2013). There, the ALJ found that the claimant could not perform work that required analyzing mathematical information. *Id.* at *14. But the jobs offered at step five required employees to "[a]dd, subtract, multiply, and divide all units of measure." *Id.* That was an obvious conflict: The ALJ excluded mathematical computation from the claimant's abilities, and the jobs offered at step five explicitly required those abilities. *See id.* Here, the same conflict would be present if the DOT required "frequent overhead reaching" because, in that case, the DOT would require something that the ALJ excluded. But the DOT says no such thing; instead, it requires frequent reaching—full stop. That is only a conflict if one implicitly assumes that most of the reaching must be done overhead. But an implicit conflict, by definition, is not the same things as an "obvious" one. *Overman*, 546 F.3d at 463. Thus, the ALJ had no duty to resolve it.

In any case, much of this is beside the point: The ALJ here *did* recognize possible tension between the DOT and the VE's testimony, and she questioned the VE about it:

> ALJ: When I indicated earlier about the reaching it was different for the overhead versus the other directions. I don't think the DOT specifically addresses that, for example. What did you rely on if it -- well, it's not necessarily inconsistent with the DOT, but not addressed by the DOT. How do you make that distinction?
>
> VE: Yes. Just observing the jobs performed and workday employer practices through my professional experience and training in vocational rehabilitation.

(R. at 91.) The ALJ thus correctly recognized that the reaching limitations were not "necessarily inconsistent with the DOT" because the DOT does not subdivide reaching

9

requirements on a direction-by-direction basis. To allay the ALJ's concerns, the VE testified that, in her experience, the jobs she cited do not require employees to reach overhead more than occasionally. Jordan seeks to discredit this testimony by describing it as "boilerplate." (Pl. Br. 15.) But Jordan does not suggest—nor could she—that VE's are not allowed to rely on their professional experience when discussing job requirements on which the DOT is silent. *See Zblewski*, 302 F. App'x at 494 ("[E]ven if the ALJ failed to comply with S.S.R. 00–4p, that failure was harmless because the ALJ was entitled to rely on other, unchallenged VE testimony.").

In sum, Jordan faces a high bar because she did not object to the VE's testimony at the hearing. It is bedrock law that parties must "object to issues and preserve arguments" to raise them in later proceedings. *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023). As applied to SSR 00–4p, the Seventh Circuit has held that "an ALJ may rely on imperfect VE testimony if a claimant does not question the basis for the testimony at the time of the hearing." *Overman*, 546 F.3d at 464. So, even if the VE's conclusion that the referenced jobs do not require overhead reaching was "imperfect," it was not facially implausible. Since Jordan did not object to the testimony, the ALJ was entitled to rely on it.

## II. The ALJ Properly Considered Jordan's Subjective Account of Her Symptoms

Jordan next challenges the ALJ's analysis of her subjective complaints of pain. She argues that the ALJ merely "included a boilerplate credibility finding," "summarize[d] the evidence," and "made some editorial commentary," but failed to

"include any substantive discussion of the regulatory factors applicable to credibility." (Pl. Br. 17.) The Commissioner retorts that the ALJ "explained the bases for" concluding that Jordan's impairments "were not as severe as she claimed," which is all the regulations require. (Comm'r Br. 2.[2])

As both parties recognize, the RFC refers to "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [her] impairment." *Moore*, 743 F.3d at 1121. That determination involves two steps. First, the ALJ must "consider whether there is an underlying 'determinable physical or mental impairment that could reasonably be expected to produce the [claimant's] symptoms.'" *Schneck*, 357 F.3d at 701 (quoting SSR 96-7p).[3] If there is, the ALJ must then "evaluate the 'intensity, persistence, and functionally limiting effects of the symptoms'"—that is, the ALJ must determine the extent to which the claimant's symptoms limit her ability to work. *Id.* (quoting *Stevenson v. Charter*, 105 F.3d 1151, 1154 (7th Cir. 1997)). Here, the ALJ determined that Jordan's impairments "could reasonably be expected to cause significant symptoms." (R. at 26.) That finding triggered the second step in crafting the RFC, which required the ALJ to evaluate the extent to which Jordan in fact experiences symptoms that limit her ability to work. It is the ALJ's analysis at this step that Jordan challenges— in particular, the ALJ's treatment of Jordan's pain symptoms.

---

[2] "Comm'r Br." refers to the Commissioner's brief, filed in November 2024. (Doc. 11.)
[3] Although Social Security Ruling 96-7p has been superseded on other grounds by SSR 16-3p, the quoted portion has not been altered. *See* SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 28, 2016).

It is settled that "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Instead, ALJ's must "consider a number of factors" in addressing a claimant's account of their symptoms, including relevant medical evidence, prior work, daily activities, and treatment protocols.[4] *Id.* In doing so, an "ALJ need not discuss every detail in the record as it relates to every factor." *Id.* Rather, the ALJ must provide "specific reasons supported by the record" for discounting a claimant's subjective account of their symptoms. *Id.* at 1279. So long as the ALJ gives those reasons, courts "will not overturn" an ALJ's rejection of a claimant's subjective account "unless it is patently wrong." *Id.*

The ALJ's written decision meets that standard. In crafting Jordan's RFC, the ALJ engaged in a thorough discussion of Jordan's subjective allegations—including those that relate to her pain. (*See, e.g.*, R. at 37 ("The claimant testified that pain is her biggest issue with regard to her ability to work."); R. at 37 ("[Jordan] said that she has pain with standing, sitting, and using her hands."); R. at 37 ("The claimant reported that she also experiences recurrent dislocations and that her hip can dislocate without warning while she is walking, which causes pain.").) After discussing that testimony, the ALJ concluded that Jordan's "statements concerning

---

[4] The full list of factors include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate their pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of their pain or other symptoms; (vi) any measures the claimant uses or has used to relieve their pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

12

the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 38.) The ALJ then launched into a thorough discussion of the medical record—including the evidence that both supported and conflicted with Jordan's subjective allegations. (*See, e.g.*, R. at 39 (acknowledging Jordan's visits the emergency room "with complaints related to pain"); R. at 39 (acknowledging Jordan's medication for pain, anxiety, depression); R. at 39 (noting that examination for chronic conditions was "within normal limits"); R. at 39 (explaining that shoulder exam showed "normal range of motion" and a "negative" x-ray); R. at 40 (discussing Jordan's description of back pain as "waxing and waning for years"); R. at 40 (noting a doctor's visit in January 2024 where Jordan showed "no current pain"); R. at 41 (identifying Jordan's report that she experienced pain on a "10/10 level three times per week"); R. at 41 (discussing Jordan's treatment protocols for pain following a "busy weekend with a lot of walking and movement); R. at 42 ("While she has sought treatment for pain and dislocations related to Ehlers-Danlos syndrome . . . examinations largely show an intact gait, motor strength, coordination, and neurological status."); R. at 42 (explaining that Jordan has "reported activities such as working with dogs, helping with moving, and pushing/pulling large items"). Following this discussion, the ALJ explained how Jordan's RFC—for a reduced range of light work—accounted for her symptoms, including pain. Indeed, the ALJ found that Jordan's pain is exacerbated by physical exertion and the weather, and the ALJ included specific restrictions in Jordan's RFC to account for those aggravating factors. In analyzing Jordan's subjective complaints,

13

the ALJ did not "ignore an entire line of evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). To the contrary, the ALJ examined the relevant evidence—including Jordan's testimony and the objective medical evidence—in considerable depth. *See Diana K.G. v. Comm'r of Soc. Sec.*, No. 1:22-cv-01113, 2023 WL 10511442, at *3 (C.D. Ill. June 30, 2023) (explaining that an ALJ is entitled to "contrast and compare" the record evidence with the claimant's subjective account).

Jordan mounts several challenges to the ALJ's analysis on this score, but none are persuasive. First, Jordan isolates one paragraph of the ALJ's opinion and attacks it for failing to consider: (1) the location, duration, frequency, and intensity of Jordan's pain; (2) precipitating and aggravating factors; and (3) measures used to relive pain or other symptoms. (Pl. Br. 17–18.) But nothing in the Social Security regulations—or the cases interpreting them—require an ALJ to discuss every factor in every portion of their opinion. Quite the opposite: courts in this district have held that an ALJ's opinion must be read in context and "as a whole." *Shirley W. v. Comm'r of Soc. Sec.*, No. 1:23-cv-1181, 2024 WL 2337666, at *3 (C.D. Ill. Apr. 25, 2024). And reading the ALJ's entire opinion here demonstrates that the ALJ did in fact consider each of those factors. The ALJ discussed both Jordan's account of the location, frequency, and intensity of her pain, (*see, e.g.*, R. at 42 (explaining that Jordan's pain is most pronounced in standing, sitting, and using her hands); R. at 38 (acknowledging Jordan's pain in her shoulders)), along with precipitating and aggravating factors, (*see, e.g.*, R. at 42 ("The undersigned has also considered [Jordan's] testimony that her pain can be aggravated by weather.")). The ALJ also

14

discussed treatment protocols, including physical therapy and home exercise plans. (*See* R. at 42.) Jordan's argument that the ALJ overlooked those factors is thus inconsistent with the ALJ's opinion.

Jordan also suggests that the ALJ did not consider Jordan's "testimony—or the evidence within her treatment record corroborating—that she has pain that makes it difficult to walk, sit, or stand for long periods." (Pl. Br. 18.) That criticism is unfounded: The ALJ, more than once, explained that Jordan experiences difficulty sitting for long periods and that her back pain makes it difficult to stand, (R. at 42 – 43.) And the ALJ incorporated those findings into Jordan's RFC, which provides for a reduced range of light work—defined by the regulations as requiring, at most, "standing or walking, off and on, for six hours during an eight-hour workday." *Clifford*, 227 F.3d at 868 n.2 (citing 20 C.F.R. § 404.1567(b)). Nor does the fact that the ALJ omitted some facts from the record constitute reversible error. *See Grotts*, 27 F.4th at 1278 ("[T]he ALJ did not need to address every fact in the record.") Likewise, nothing Jordan identifies, (*see* Pl. Br. 18), shows that he ALJ's partial rejection of Jordan's subjective complaints was "patently wrong," *Grotts*, 27 F.4th at 1278.

Further, Jordan argues that she has had "consistent issues with her shoulders." (Pl. Br. 18.) But the ALJ *credited* Jordan's testimony on that point by including in Jordan's RFC a limitation on reaching, pushing, and pulling. (R. at 42 (explaining that Jordan's reaching limitations in her RFC account for "recurrent dislocations, although imaging in the file has been within normal limits.").) Jordan's

observation that she had consistent issues with her shoulders in no way undermines the ALJ's opinion—the ALJ largely credited her testimony on that point.

In a similar vein, Jordan criticizes the ALJ's opinion for "fail[ing] to provide a sufficient discussion of" her "consistent complaints of pain." (Pl. Br. 19.) This is puzzling: The ALJ devoted nearly two pages of her opinion to discussing Jordan's testimony, including her complaints of pain. (*See* R. at 37–38.) It is unclear what Jordan would have preferred the ALJ to do, if not thoroughly summarize Jordan's complaints and then weigh that evidence against the medical record and state agency opinions. *See Gedatus*, 994 F.3d at 900 (explaining that the ALJ was entitled to reject claimant's subjective symptom evaluation where the ALJ considered relevant medical history, the claimant's testimony, and the state agency opinions); *see also Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009) (same where the ALJ recounted the claimant's daily activities that contradicted their of subjective pain).

Finally, Jordan makes the broad assertion that the ALJ "failed to properly explain how she formulated the RFC." (Pl. Br. 19.) After reciting the legal standards, Jordan states in a conclusory fashion that the ALJ's RFC "lack[ed] [an] explanation." (Pl. Br. 19.) It is settled that underdeveloped arguments are waived. *See James M. v. Saul*, No. 2:20-cv-183, 2021 WL 2820532, at *2 (S.D. Ind. July 7, 2021). Even were the Court inclined to address the argument, however, it would reject it. As discussed, the ALJ's opinion thoroughly discussed the medical evidence and explained that Jordan's physical limitations support a reduced range of light work. (*See* R. at 42.)

16

Under the Social Security Act, that is all that was required of her. *See* 42 U.S.C. § 405(g).

## CONCLUSION

The Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 3rd day of March 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge
